UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 6:07-339-KKC

LINDA L. BAKER,                                                                    PLAINTIFF

v.                                          **OPINION AND ORDER**

MICHAEL J. ASTRUE,
Commissioner of Social Security,                                                   DEFENDANT

\* \* \* \* \* \* \* \*

This matter is before the Court on the Cross Motions for Summary Judgment filed by

Plaintiff Linda L. Baker [R. 10] and Defendant Commissioner Astrue [R. 11].  For the reasons

stated below, Plaintiff's Motion for Summary Judgment is **DENIED**, and Defendant's Motion

for Summary Judgment is **GRANTED**.

A.      **Factual and Procedural Background**

On January 24, 2005, Plaintiff filed her application for Disability Insurance Benefits and

Supplemental Security Income with the Social Security Administration.  Plaintiff claimed a

disability onset date of August 16, 2004 that was caused by multiple physical and mental

problems with associated pain, weakness, and an inability to cope with stress.  Plaintiff's Motion

for Summary Judgment, at 3 [hereinafter "Plaintiff's Motion"].  Specifically, Plaintiff complains

of impairments in her back, legs, feet, and nerves.  ALJ's Opinion, at 2.  Plaintiff also states that

she was diagnosed with arthritis, that she can sit for no more than thirty minutes at a time, and

that she can stand for no more than ten to fifteen minutes at a time.  *Id.*  Plaintiff has not been

referred for specialized treatment for her back and leg pain.  *Id.*  Plaintiff states that she has

severe headaches that require her to lie down, that she needs to frequently sit and rest due to back

pain, and that she is unable to deal with the public.  *Id.*  She claims that she cannot do a sitting-type job because she cannot sustain concentration due to her need to continually shift her position.  *Id.*  As for her daily activities, Plaintiff testifies that she goes grocery shopping twice a month, that she can bathe and dress, prepare simple meals, do laundry at the laundromat, and do dishes and other chores when she feels "up to it."  *Id.*

Plaintiff received treatment for "bad nerves" and panic attacks at Cumberland River Comprehensive Care [hereinafter "Comp Care"] for three years. ALJ's Opinion, at 2-3.  The administrative transcript contains treatment records and diagnostic impression statements from Comp Care from April 3, 2003 to August 16, 2006.  The record also contains medication follow-up sheets from Comp Care from March 9, 2000 to May 4, 2005.  Transcript, at 198-227, 361-72 [hereinafter, "Tr."].  Intermittent treatment notes from Comp Care reflect Plaintiff's complaints of worry, stress, and depression.  ALJ's Opinion, at 3.  In April 2003, Plaintiff had a Global Assessment of Functioning [hereinafter, "GAF"] score of sixty-five, indicating moderate limitations of functioning.  In May 2003 and June 2004, Plaintiff was described as depressed and anxious and with functional impairment in her interpersonal ability, but also with adequate insight, judgment, memory, and psychomotor activity.  Tr., at 210-16, 218-24.  On May 4, 2005, Plaintiff was described as alert, oriented X3, with a nervous mood, and blunted affect.  Plaintiff complained of swelling in her legs and back, but denied any psychotic symptoms.  Tr., at 209. July 6, 2005 records state that Plaintiff was depressed, had adequate affect, judgment, and memory, and had good orientation and attention.  Tr., at 201-07.  However, Plaintiff's societal/role functioning, daily living/personal care functioning, physical functioning, and cognitive/intellectual functioning were all noted to be "slightly low," with her interpersonal

2

functioning as "slightly high." Tr., at 205. Plaintiff's GAF at this time was sixty. On this date, Plaintiff stated that she had only brief sad moods, had a favorable response from her medication, and that she continued to have back pain and leg swelling, and was diagnosed with borderline diabetes mellitus. Plaintiff was described as alert, oriented X3, with a "better" mood and a blunted affect. Tr., at 200.

Plaintiff's remaining treatment records from Comp Care reflect similar assessments as the previous records. On November 17, 2005, Plaintiff was described as alert, oriented X3, with a depressed mood and labile affect. Plaintiff again denied any psychotic symptoms. Plaintiff noted that her depression and anxiety worsened during a period in which she ran out of medications. Plaintiff also reported episodes of panic attacks, but was unable to elaborate on the symptoms of these attacks. Tr., at 372. One month later, Plaintiff reported that she was "feeling a little better" since being medicated on Paxil CR, though she remained depressed and continued to have anxiety attacks. Tr., at 371. A follow-up appointment on February 8, 2006 noted Plaintiff's continuing depression and anxiety, and described her as alert, oriented X3, and with a dysphoric affect. Tr., at 370. A July 6, 2006 assessment stated that Plaintiff had adequate judgment, insight, and memory, as well as good attention and orientation, but also noted that her societal/role functioning, daily living/personal care functioning, physical functioning, and cognitive/intelligent functioning all were "slightly low." Tr., at 362-68. Plaintiff's interpersonal functioning was "slightly high." Tr., at 366. Plaintiff also states that she sought treatment at Haven House for two weeks in May 2006, and for five days in the month prior to her hearing. ALJ's Opinion, at 3.

Plaintiff also submitted treatment records from the Pineville Community Hospital

3

[hereinafter "Pineville"] from the period of March 2003 to July 2006.  In November 2003, Plaintiff presented to Pineville with complaints of right upper quadrant pain.  Tr., at 141.  She was diagnosed with acute cholecystitis, prescribed Cipro and Antivert, and advised that she could return to work two days after discharge.  Tr., at 141.  In December 2003, Plaintiff underwent laparoscopic cholecystectomy without difficulty.  Tr., at 149.  In January 2004, Plaintiff returned to Pineville with complaints of persistent diarrhea over a short period of time; this improved with the use of Bentyl and changes in her diet.  Tr., at 156.  In June 2004, Plaintiff was admitted to Pineville with complaints of headaches.  Tr., at 167.  Plaintiff's examiner noted headaches and hypertension, and released her with instructions to continue her medication as prescribed.  Tr., at 167-68.

That same month, Plaintiff returned to Pineville with complaints of intermittent dizziness accompanied by chest pain, palpitations, and severe headaches at times.  Tr., at 171.  An examination indicated that her CBC was within normal limits, her chest x-ray was unremarkable, and a CT scan of her head was normal.  At this time, Dr. Steven Morgan performed stress echicardiogram tests on Plaintiff that revealed no adverse signs or symptoms and returned negative for ischemia.  Tr., at 177; ALJ's Opinion, at 3.  These tests were non-diagnostic due to Plaintiff's limited exercise capacity.  Tr., at 177; Plaintiff's Motion, at 4.  Plaintiff was discharged in stable and improved condition and prescribed a variety of medications.  Tr., at 171.  No specific cardiac diagnosis was made.  ALJ's Opinion, at 3.  In December 2004, Plaintiff returned to Pineville with complaints of intermittent substernal chest pain.  Tr., at 188.  Plaintiff's CBC, chest x-ray, and EKGs all appeared normal, and telemetry monitoring failed to reveal any significant arrhythmias.  Tr., at 188, 195; ALJ's Opinion, at 3.  Plaintiff was

4

diagnosed with chest pain of uncertain etiology, and was discharged the following day in stable condition, free of pain, and prescribed several medications, with directions to follow a low-salt diet.  Tr., at 188.

Dr. Shawn Fugate was Plaintiff's primary care physician during her treatment at Pineville.  The earliest of his treatment notes date back to June 2003, and the latest are from July 2006.  Dr. Fugate's earliest treatment notes, those from 2003, reflect Plaintiff's complaints of dizziness, earaches, and cough, with some instances of pain and nausea.  Tr., at 294-98.  They also indicate diagnoses of upper respiratory infection, vertigo, and gastroesophageal reflux disease [hereinafter, "GERD"].  Tr., at 294-98.  Dr. Fugate's 2004 treatment notes indicate dizziness, earaches, and diarrhea, as well as occasional diagnoses of upper respiratory infection and bronchitis.  Tr., at 282-93.  Also, in February 2004, Dr. Raju Vora performed an EGD and a biopsy, and diagnosed Plaintiff with duodenitis, GERD, and acute erosive esophagitis.  Tr., at 239-41.  In 2005, Dr. Fugate intermittently noted Plaintiff's anxiety, chest pain, dizziness, and persistent skin rashes on the face and abdomen, and diagnosed Plaintiff with CP, back pain, dermatitis, tinea corposis, and acne rosacea.  Tr., at 275-81.  Dr. Fugate also treated Plaintiff for hypertension in November 2005.  Tr., at 275.  In January 2005, studies by Dr. Morgan returned normal with no inducible ischemia or dysrhythm, and in May 2005, Dr. Krinsky stated that Plaintiff had no acute fracture or dislocation and had a normal lordosis.  Tr., at 302-04.

In his 2006 treatment notes, Dr. Fugate also noted instances of chest pain, back pain, dizziness, and anxiety, and diagnosed Plaintiff with hypertension, hypothyroidsism, and GERD in July 2006.  Tr., at 273-74, 373-76.  In February 2006, Dr. Johnson performed a CT scan of Plaintiff's lumbar spine and noted that Plaintiff had arthritic changes of the lower facets with

5

spurring.  Tr., at 301.  However, there was no evidence of acute abnormality, and there was only mild, but not significant, bulging of the disc at the L4-5 level.  Tr., at 301.  In March 2006, Plaintiff was again seen by Dr. Fugate and Dr. Vora at Pineville following complaints of nausea, vomiting, diarrhea, hematochezia, and hematemesis.  Tr., at 252.  Plaintiff's iron levels and CBC were normal, though a CT scan of her liver revealed a fatty infiltration and a small hiatel hernia. Tr., at 252-57.  Dr. Vora also suspected that she had irritable bowel syndrome.  Tr., at 255. Plaintiff was discharged in stable and improved condition, with prescriptions of Levaquin and Prevacid.  Tr., at 252.

On April 19, 2006, Dr. Fugate submitted a short letter containing an opinion about Plaintiff's medical condition.  In it, Dr. Fugate stated that Plaintiff suffers from severe degenerative joint disorder, inflammatory arthritis, hypertension, hypothyroidism, reactive airway disease, GERD, depression, and anxiety.  Tr., at 272.  Dr. Fugate followed this with a statement that "Ms. Baker's medical conditions have progressed to the extent that she is unable to maintain employment, and render her disabled."  Tr., at 272.

On August 13, 2005, Dr. Michael Sifford performed a consultative physical examination of Plaintiff.  In his report of this examination, Dr. Sifford noted Plaintiff's description of her illness history.  This history included the following: substernal chest pain two to three times weekly associated with shortness of breath; no radiation of pain and no precipitating or alleviating factors; chronic low back pain for three to four years; acid reflux with sour test and regurgitation; bilateral radiculopathy-type pain that worsens with extended periods of standing; negative x-rays and stress tests; pain in her right arm and hand; and no known trauma.  Tr., at 234-37.  Dr. Sifford stated that Plaintiff's chest pain is not completely inconsistent with angina,

but also noted that her stress test was negative and is associated with regurgitation consistent

with GERD.  Tr., at 236.  Dr. Sifford noted Plaintiff's back problems and a mild change in range

of motion, but opined that it did not appear to be limiting and could be treated.  Tr., at 236.  Dr.

Sifford also speculated that Plaintiff's right arm pain and weakness could be consistent with

entrapment of the ulnar nerve at the elbow, but he admitted that he had no findings consistent

with this.  Tr., at 236.  Dr. Sifford concluded by opining that based on his examination, there was

no evidence for significant restrictions in Plaintiff's tolerance for stooping, bending, reaching,

sitting, standing, moving about, carrying or handling objects, or understanding normal

conversational speech.  Tr., at 237.

On July 24, 2005, Dr. Jeanne Bennett examined and evaluated Plaintiff's alleged

disabling conditions at the request of the Social Security Administration.  Dr. Bennett did not

observe any psychomotor disturbances during her examination, and she ambulated without any

gait disturbance.  Tr., at 230.  Dr. Bennett conducted a number of verbal tests on Plaintiff, with

the following results, among others: Plaintiff could repeat two but not three digits in reverse

order; she could not perform serial threes backwards from twenty, though she could count

backwards from twenty to one without error; and she could recall three of three words

immediately following presentation, but none after a five-minute delay.  Tr., at 230.  Dr. Bennett

diagnosed Plaintiff with somatoform disorder NOS, anxiety disorder NOS, and depressive

disorder NOS, with a current GAF of 50 (indicating serious limitations of functioning).  Tr., at

232; ALJ's Opinion, at 4.  Dr. Bennett opined that Plaintiff's capacity to understand instructions

towards the performance of simple repetitive tasks, as well as her capacity to interact

appropriately with workers and supervisors, is not affected by her impairments.  However, Dr.

Bennett also opined that Plaintiff's capacity to sustain attention and concentration towards the

performance of simple repetitive tasks is affected with slight limitations, and that her ability to

tolerate the stress and pressure of day-to-day employment is affected with marked limitations.

Tr., at 232.

        Two state agency reviewing psychologists, Drs. Stephen Scher and Jane Brake, evaluated

Plaintiff's medical record in August and November 2005.  They determined that Plaintiff's

affective, anxiety, and somatoform disorders were not of listing-level severity under the social

security regulations.  Tr., at 313-40.  They also determined that Plaintiff has moderate limitations

in maintaining social functioning, concentration, and persistence, and only mild limitations in her

activities of daily living.  Tr., at 323, 337.  Dr. Brake also filled out a mental residual functional

capacity assessment [hereinafter "RFC"] for Plaintiff.  This RFC assessment concluded that

Plaintiff was only moderately limited in certain aspects of functioning, including remembering

and carrying out detailed instructions, maintaining attention for extended periods of time,

working with others and interacting with the general public without being distracted, and

responding appropriately to changes in the work setting.  Tr., at 341-42.  Dr. Brake expressly

rejected Dr. Bennett's assessment that Plaintiff has marked limitations, stating that "MSE did not

reflect marked limitations; thus, the examining opinion is not adopted as it is not consistent with

the preponderance of mental evidence."  Tr., at 343.  Dr. Brake concluded that Plaintiff remains

able to understand and recall simple material, concentrate and persist at simple tasks in two-hour

segments, function in an object-focused setting that requires little public contact, and adapt to

routine changes.  Tr., at 343.  Dr. Brake's mental RFC assessment was affirmed by Dr. Scher,

and also by Dr. Hernandez, who stated that Plaintiff's impairments do not significantly impact

her ability to perform basic work-related activities.  Tr., at 346-52.

Plaintiff's application for disability insurance benefits and supplemental security income was denied initially, and again on reconsideration.  Tr., at 36-46, 384-93.  An administrative hearing was then held before Administrative Law Judge [hereinafter "ALJ"] Donald A. Rising on November 7, 2006.  Tr., at 395-431.  On December 14, 2006, the ALJ issued an opinion denying Plaintiff's disability application.  The ALJ explained that Plaintiff's physical impairments did not amount to "severe" impairments, and that her mental impairments of anxiety and depressive disorders, while "severe," were not of listing-level severity.  ALJ's Opinion, at 5.  In reaching this conclusion, the ALJ rejected Dr. Fugate's April 19, 2006 opinion.  The ALJ stated that Dr. Fugate's treatment records include virtually no physical examination findings, and that Dr. Fugate made a conclusory statement about Plaintiff's ability to work that is not supported by the objective medical record.  *Id.*  The ALJ also argued that Dr. Fugate's opinions are contradicted by consultative examination findings, that the medical record does not contain tests and clinical findings to support his conclusions, and that several of Plaintiff's claimed impairments are well controlled with medication.  *Id.*  Similarly, the ALJ also rejected Dr. Bennett's July 24, 2005 assessment due to a stated lack of support from clinical findings in the report, because the assessment was rejected by the state agency medical consultants, and because "it is inconsistent with the treating source assessments themselves as noted at Exhibit 8F, pp. 8, 17 & 25; and Exhibit 20F, page 6." *Id.* at 7.  Additionally, the ALJ stated that he found Plaintiff's testimony at her administrative hearing to be less than credible based on a discrepancy regarding a statement she previously made.  *Id.*

The ALJ determined that Plaintiff's mental limitations only resulted in mild restrictions

9

in the activities of daily living, and moderate restrictions in social functioning and in maintaining concentration, persistence, or pace. *Id.* at 6. The ALJ then found that Plaintiff retains the RFC to perform a full range of exertional work. *Id.* at 7. The ALJ limited Plaintiff to "simple, object-focused tasks with little public contact that accommodate moderate limitations in her abililty to carry out detailed instructions, maintain extended attention or concentration, work in coordination with others without being distracted, interact with the public and respond appropriately to routine work setting changes." *Id.* at 7-8. Finally, utilizing the assistance of a vocational expert, the ALJ determined that, although Plaintiff cannot perform her past relevant work, she can perform various types of jobs that are available in significant numbers in the national economy. *Id.* at 8-9. The ALJ therefore found that Plaintiff is not disabled under the Social Security Act. The Social Security Appeals Council declined to reconsider this ruling, thus rendering the ALJ's decision final and ripe for review. Plaintiff then brought the present action to review the ALJ's decision.

**B.     Standard of Review**

When reviewing decisions of the Social Security Agency, the Court is commanded to uphold the Agency decision, "absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (internal quotation marks and citation omitted). Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 285-86 (6th Cir. 1994). The Court is required to defer to the Agency's decision "even if

10

there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Further, when reviewing the ALJ's decision, the Court cannot review the case de novo, resolve conflicts in the evidence, or decide questions of credibility. *Nelson v. Comm'r of Soc. Sec.*, 195 Fed. Appx. 462, 468 (6th Cir. 2006); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Where the Commissioner adopts the ALJ's opinion as its own opinion, the Court reviews the ALJ's opinion directly. *See Sharp v. Barnhart*, 152 Fed. Appx. 503, 506 (6th Cir. 2005).

## C.    Analysis

Plaintiff raises three main arguments in her Motion for Summary Judgment.  First, she argues that the ALJ's decision that Plaintiff has no severe physical impairments is not supported by substantial evidence.  Second, she similarly argues that the ALJ's decision that Plaintiff's severe mental impairments are not of listing-level severity also is not supported by substantial evidence.  Finally, she argues that the ALJ failed to properly explain his rejection of the opinion of Dr. Bennett.[1]

## 1.    Substantial Evidence Review of Decision on Physical Impairments

It is the responsibility of the Commissioner of Social Security, acting through the ALJ, to determine whether a social security disability claimant qualifies as legally disabled, and is thus

---

[1]  Plaintiff attempted to raise several other arguments in a Response brief that she filed after Defendant had filed his Motion for Summary Judgment.  Since the Court determined that Plaintiff had not shown good cause to file this additional Response brief, as required by the Social Security Briefing Schedule, these additional arguments will not be considered in the Court's decision.

deserving of disability insurance benefits and supplemental security income.  *See* 20 C.F.R. §

404.1527(e)(1).  To make this determination, the ALJ must perform a five-step analysis, as

follows:

> First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful
> activity" at the time she seeks disability benefits.  Second, plaintiff must show that she
> suffers from a "severe impairment" in order to warrant a finding of disability.  A "severe
> impairment" is one which "significantly limits . . . physical or mental ability to do basic
> work activities."  Third, if plaintiff is not performing substantial gainful activity, has a
> severe impairment that is expected to last for at least twelve months, and the impairment
> meets a listed impairment, plaintiff is presumed to be disabled regardless of age,
> education or work experience.  Fourth, if the plaintiff's impairment does not prevent her
> from doing her past relevant work, plaintiff is not disabled.  For the fifth and final step,
> even if the plaintiff's impairment does prevent her from doing her past relevant work, if
> other work exists in the national economy that plaintiff can perform, plaintiff is not
> disabled.

*Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001) (citing 20 C.F.R. §§ 404.1520,

404.920).  An impairment or combination of impairments is considered "severe" if it

"significantly limits [the claimant's] physical or mental ability to do basic work activities."  20

C.F.R. § 404.1520(c).  Moreover, "an impairment can be considered not severe only if it is a

slight abnormality that minimally affects work ability regardless of age, education, and

experience."  *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988).

In this case, the ALJ went through the above five-step process to determine that Plaintiff

is not legally disabled with regards to her alleged physical impairments.  The ALJ first found that

Plaintiff was not then engaged in substantial gainful activity.  ALJ's Opinion, at 2.  Second, after

considering the record medical evidence regarding Plaintiff's physical impairments, the ALJ

concluded that these physical impairments, either alone or in combination, did not amount to

"severe" impairments under the social security regulations.  Therefore, the ALJ's disability

analysis with regards to Plaintiff's physical impairments ended at this stage with a finding of no

disability.  ALJ's Opinion, at 5; *see also* 20 C.F.R. § 404.1520(a)(4)(ii).  Plaintiff takes issue

with this determination.  She contends that substantial evidence does not support the ALJ's

finding that Plaintiff's physical impairments are not severe.

      Plaintiff's argument is without merit, as substantial evidence does indeed support the

ALJ's finding of no severe physical impairment.  Plaintiff has claimed to suffer from completely

disabling back and leg pain, but despite years of hospital visits, her doctors have never referred

her to specialized treatment for this supposedly disabling pain.  ALJ's Opinion, at 3.  Plaintiff's

treatment records from Dr. Fugate and other doctors at Pineville reflect intermittent complaints

of back and leg pain, headaches, dizziness, and diarrhea.  *See, e.g.*, Tr., at 141, 167, 188, 273-74,

282-93.  At various times, Plaintiff has been diagnosed with of number of afflictions, including

hypertension, acute cholecystitis, hypothyroidsism, GERD, upper respiratory infections, and

bronchitis.  *See, e.g.*, Tr., at 141, 167-68, 273-74, 282-93, 294-98.  However, treatment for these

complaints was very conservative in nature, primarily consisting of medication (occasionally

with directions merely to continue on existing medications) and diet restrictions.  *See, e.g.*, 167-

68, 171, 188.  Also, as the ALJ pointed out, Plaintiff's hypertension, hypothroidism, and GERD

appear to be well controlled with Plaintiff's medications.  ALJ's Opinion, at 5.

      Moreover, most of the examinations and tests performed on Plaintiff returned results well

within the normal range, and failed to show anything remarkable that would allow a conclusion

that Plaintiff's physical impairments are totally disabling.  For example, in June 2004, Plaintiff's

CBC was within normal limits, her chest x-ray was unremarkable, and a CT scan of her head was

normal.  Tr., at 171, 177.  Stress echocardiogram tests revealed no adverse signs or symptoms,

and also returned negative for ischemia.  Tr., at 177.  In December 2004, Plaintiff's CBC, chest x-ray, and EKGs all appeared normal, despite Plaintiff's complaints of chest pain.  Tr., at 188, 195.  In January 2005, tests and studies on Plaintiff returned normal, with no inducible ischemia or dysrhythm.  Tr., at 302-04.  In May 2005, Dr. Krinsky opined that Plaintiff had no acute fracture or dislocation and had a normal lordosis.  Tr., at 302-04.  In March 2006, Plaintiff's CBC, as well as her iron levels, were again normal, although a CT scan revealed a fatty infiltration and a small hiatel hernia.  Tr., at 252-57.

The findings of consultative examiner Dr. Sifford also provide substantial evidence in support of the ALJ's determination.  Although Dr. Sifford noted that Plaintiff's chest pain was "not completely inconsistent with angina," he also noted that Plaintiff's stress test was negative.[2] Tr., at 236.  Dr. Sifford stated that Plaintiff's back problems and mild change in her range of motion did not appear to be limiting and could be treated.  Tr., at 236.  Although Dr. Sifford theorized that Plaintiff's right arm pain could be consistent with entrapment of the ulnar nerve at the elbow, he expressly admitted that there were no findings to support this theory. Tr., at 236.  Dr. Sifford concluded that there was no evidence of any significant restriction in Plaintiff's basic mobility.  Tr., at 237.  Such a conclusion directly supports the ALJ's determination that Plaintiff does not suffer from any severe physical impairments.

It is also worth noting that the ALJ determined that Plaintiff's testimony at her administrative hearing lacked credibility.  ALJ's Opinion, at 7.  During the hearing, the ALJ

---

[2]  Even without the qualification of Plaintiff's negative stress test, the statement "not completely inconsistent with angina" is hardly a strong endorsement of supposedly disabling symptoms.  Indeed, this statement even implies that Plaintiff's symptoms are at least "somewhat inconsistent" with angina.  Dr. Sifford's unwillingness to phrase his observation in an affirmative syntax makes the persuasive force of this statement as evidence for Plaintiff's disability questionable at best.

asked Plaintiff a question about a comment in her treating-source records stating that Plaintiff

"'understands that until she gets her disability, she is not supposed to do anything or go

anywhere.'"  *Id.*  Plaintiff first told the ALJ that she knew nothing about this statement, but when

her representative then questioned her about it, Plaintiff inconsistently responded "that she

should not do things like go to yard sales because then she would not be found disabled."  *Id.*

Plaintiff then admitted that she does attend yard sales, and explained to the ALJ that she did not

understand the question when he asked it the first time.  *Id.*  From this admission and

inconsistency, the ALJ concluded that Plaintiff's testimony is not credible, and that her physical

and mental functional abilities are greater than she asserts.  *Id.*  Such credibility determinations

are evidence that the ALJ may take under consideration in his disability determination, and they

cannot be reevaluated by a reviewing court.  *See Nelson*, 195 Fed. Appx. at 468; *Garner*, 745

F.2d at 387.

        Plaintiff's substantial evidence argument centers on the claim that the ALJ's finding of no

severe physical impairment "is contrary to the claimant's treatment history, to the objective

evidence and to the opinion of her treating physician."  Plaintiff's Motion, at 13.  Particularly,

Plaintiff argues that her low-back problems are supported by CT scan findings, that she has a

history of chest pain that Dr. Sifford said was not completely inconsistent with angina, and that

she has chronic digestive problems including GERD, duodenitis, and irritable bowel syndrome.

*Id.*  The previous pages of discussion should be sufficient to refute Plaintiff's claim that the

ALJ's finding is contrary to Plaintiff's treatment history and objective evidence, as the record is

replete with evidence consistent with the ALJ's determination.

        As for the determination being contrary to the opinion of her treating physician, Dr.

Fugate, this particular opinion was rejected by the ALJ.  ALJ's Opinion, at 4-5.  Under the social

security regulations, a treating-source opinion must be given controlling weight in the ALJ's

disability determination if it "is well-supported by medically acceptable clinical and laboratory

diagnostic techniques and is not inconsistent with the other substantial evidence in [the

Plaintiff's] case record." 20 C.F.R. § 404.1527(d)(2).  If a treating-source opinion is not given

controlling weight, the ALJ must determine the weight to be given the opinion based on several

factors, and must give "good reasons" in the notice of determination for the weight given the

treating-source opinion.  *Id.*  The factors the ALJ must apply to the treating-source opinion if it is

not given controlling weight include the following: length of the treatment relationship and the

frequency of examination; nature and extent of the treatment relationship; supportability;

consistency; specialization; and any other factors the Plaintiff brings up.  *Id.* §§

404.1527(d)(2)(i)-(ii), 404.1527(d)(3)-(6).

    Plaintiff argues that "Dr. Fugate's opinion is supported by CT scan evidence of arthritis

with spurring in the claimant's lower back," and that he "has had the benefit of treating the

claimant over a several-year period during which he was able to observe the interaction of her

combined medical conditions, both in his office and during hospitalization."  Plaintiff's Motion,

at 14. The ALJ instead determined that Dr. Fugate's opinion "is not supported by the objective

medical record."  ALJ's Opinion, at 5.  Specifically, the ALJ stated that Dr. Fugate "cited no

specific medical findings or functional limitations that would support a finding of disability" and

that the opinion is "directly contradicted by examination findings upon consultative

examination."  *Id.*  These stated reasons are sufficient to not accord the opinion controlling

weight, since they imply both that the opinion's findings are not "well-supported by medically

16

acceptable clinical and laboratory diagnostic techniques," and that they are "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2). The ALJ supported his rejection of Dr. Fugate's opinion in a number of ways. He noted that while Dr. Fugate diagnosed impairments of restrictive airway disease, Plaintiff's record contains no pulmonary function tests and she is not actively treated for this impairment. ALJ's Opinion, at 5. The ALJ also noted that Dr. Fugate's diagnosis of severe degenerative joint disease is not confirmed by any x-ray or MRI findings, and that his reference to inflammatory arthritis lacks support from clinical findings or diagnostic tests. *Id.* Finally, the ALJ noted that several of Plaintiff's afflictions are well-controlled with medication. *Id.*

Clearly, these statements embrace several of the factors that treating-source opinions must be analyzed under, including supportability and consistency. *See* 20 C.F.R. § 404.1527(d)(3)-(4). Regarding the factor of specialization, the parties have not claimed that Dr. Fugate is a specialist physician, so this factor would be inapplicable to the ALJ's review of the opinion. *See id.* § 404.1527(d)(5). The factors of length of treatment relationship/frequency of examination and nature/extent of the treatment relationship, see *id.* §§ 404.1527(d)(2)(i)-(ii), though perhaps not explicitly addressed by these particular statements, are implicitly addressed within the rest of the ALJ's decision. Throughout his opinion, the ALJ discusses and cites numerous treatment records, findings, tests, diagnoses, prescriptions, and examinations from every year that Plaintiff was at Pineville, under Dr. Fugate's treatment and oversight.[3] *See, e.g.*, ALJ's Opinion, at 2

---

[3] Dr. Fugate's treatment notes include several reports and results from testing and examinations performed directly by other physicians at Pineville, but Dr. Fugate is always listed in these reports as the admitting, ordering, and/or referring physician. As such, these records may be attributed to Dr. Fugate's treatment history of Plaintiff, and the ALJ's references to these records also go towards the length of treatment relationship/frequency and nature/extent of treatment relationship factors under 20 C.F.R. §§ 404.1527(d)(2)(i)-(ii).

17

(describing prescription from Dr. Fugate and his instruction not to lift more than ten pounds); 2-3 (Plaintiff has not been referred for specialized treatment); 3 (laparoscopic cholecystectomy, diarrhea treatment, duodenitis diagnosis, conservative treatment with diet restrictions, hospitalized for observation and testing, laboratory tests and EKGs performed, given diet restrictions and advised to seek follow-up treatment); 4 (Plaintiff reported intermittent musculoskeletal pain to Dr. Fugate, radiographic tests performed).  These discussions sufficiently embrace the remaining two factors that the ALJ must take into account when evaluating a treating-source opinion.  *See Nelson v. Comm'r of Soc. Sec.*, 195 Fed. Appx. 462, 468-72 (6th Cir. 2006) (ALJ indirectly or implicitly addressed several of the § 404.1527(d) factors by referencing evidence consistent with these factors throughout the opinion; this satisfied § 404.1527(d) even though factors not explicitly addressed).

These stated reasons for rejecting Dr. Fugate's opinion also are supported by substantial evidence in Plaintiff's medical record.  It is unquestionable that in the opinion itself, Dr. Fugate cited to no specific medical findings or functional limitations of any kind, as the ALJ said.  ALJ's Opinion, at 5; Tr., at 272.  Dr. Sifford's finding of "no evidence for significant restrictions" clearly contradicts Dr. Fugate's opinion. ALJ's Opinion, at 5; Tr., at 234-37.  Additionally, this Court's own review of the record evidence confirms the ALJ's statements regarding the lack of specific tests and findings supporting Dr. Fugate's listed impairments, as well as the fact that several of Plaintiff's ailments are "well-controlled with medication."  ALJ's Opinion, at 5.  Dr. Fugate's opinion was thus properly rejected by the ALJ, since the rejection was procedurally sound and supported by substantial evidence.  The fact that the ALJ's finding was contrary to Dr. Fugate's opinion is therefore of no avail to Plaintiff.

18

Moreover, the particular pieces of evidence that Plaintiff relies on provide very little support for her argument.  The CT scan findings from February 2006 that Plaintiff cites did reveal arthritic changes in the lower facets of Plaintiff's back with spurring, as Plaintiff states.  Plaintiff's Motion, at 14; Tr., at 301.  However, this same CT scan revealed no evidence of an acute abnormality, and showed that there was only mild, but not significant, bulging of the disc at the L4-5 level.  Tr., at 301.  Dr. Sifford's statement regarding angina, along with the rest of his examination report, has already been discussed at length.  To briefly reiterate this discussion, Dr. Sifford's report (even when considering the "not completely inconsistent with angina" comment) provides strong support for the ALJ's conclusion, and not for the Plaintiff's.  The treatment record does reflect Planitiff's diagnoses of GERD, duodenitis, and irritable bowel syndrome.  However, the fact that Plaintiff has been diagnosed and treated for these conditions cannot of itself compel an inference that Plaintiff has severe physical impairments.  "The mere diagnosis . . . , of course, says nothing about the severity of the condition."  *Higgs*, 880 F.2d at 863.  Rather, Plaintiff has the burden to produce objective medical evidence to prove that these physical and mental conditions caused functional limitations, that is, significantly limited the Plaintiff's physical or mental ability to do basic work activities. *See* 20 C.F.R. § 404.1520(c).

And on a more basic level, simply because Plaintiff can adduce some record medical evidence that arguably conflicts with the ALJ's assessment, this does not mean that the ALJ's decision must be rejected.  As long as there is substantial evidence to support the ALJ's decision, the decision must be upheld by the Court, even if an opposite conclusion could be drawn from the evidence of record.  *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).  Substantial evidence supports the ALJ's

19

conclusion that Plaintiff does not suffer from any severe physical impairment.  No reversible

error was committed here.

**2.      Rejection of Dr. Bennett's Assessment of Marked Limitations**

Before getting to Plaintiff's argument that the ALJ's decision regarding Plaintiff's mental

impairments is not supported by substantial evidence, the Court first wishes to address a related

argument raised by Plaintiff: that the ALJ failed to properly explain his rejection of Dr. Bennett's

opinion.  Disposing of the latter argument first will leave the correct resolution of the former

argument very clear.

Plaintiff argues that the social security regulations at 20 C.F.R. § 404.1527(d)(f)(2)(ii)

require the ALJ to provide a rationale for his rejection of an agency examiner, except where a

treating-source opinion is accepted.  Plaintiff's Motion, at 15.  Here, the ALJ rejected Dr.

Bennett's assessment that Plaintiff has marked limitations in her ability to tolerate the stress and

pressure associated with work.  ALJ's Opinion, at 7.  The ALJ put forth the following rationale

to explain this decision:

> I do not accept this because there a [*sic*] no clinical findings in the examiner's report to
> support same; because the opinion was rejected by nonexamining state agency medical
> consultants who reviewed a greater portion of the record including her Comp Care
> treatment records; and because it is inconsistent with the treating source assessments
> themselves as noted at Exhibit 8F, pp. 8, 17 & 25; and Exhibit 20F, page 6.

*Id.*  Plaintiff contends that this explanation for the rejection of Dr. Bennett's "marked

limitations" assessment is inadequate under the social security regulations.  The Court does not

agree.

As an initial matter, the Court notes that there is precedent in this Circuit indicating that

20

an ALJ need not give *any* explanation for his decision to reject the opinion of a physician who is not a treating source.  *See Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007) (social security regulations' requirement of "good reasons" for rejecting medical opinion only exist for treating-source opinions).  Though *Smith* was specifically premised on 20 C.F.R. § 404.1527(d)(2), and not § 404.1527(f)(2)(ii) which Plaintiff cites to, recent decisions from this Court have also stated that no rejection explanation is needed even under § 404.1527(f)(2).  *See Pierce v. Astrue*, 2008 U.S. Dist. LEXIS 12474, at *12 (E.D. Ky. Feb. 19, 2008) ("Much as with the 'reason giving' required in § 404.1527(d)(2), the requirement of an explanation as to the weight given an opinion applies only to situations were [*sic*] the opinion of a non-treating physician or psychologist is given precedence over the opinion of a treating physician. Plaintiff concedes that Dr. Spangler is not a treating source . . . .  This is to say that the ALJ was under no particular obligation to articulate a reason for rejecting Dr. Spangler's assessment of serious mental limitations in determining her RFC and that he did not err on these grounds." (citing *Smith*, 482 F.3d at 875-76)); *Burton v. Astrue*, 2008 U.S. Dist. LEXIS 10110, at *16 n.6 (E.D. Ky. Feb. 11, 2008) (same).  Under this reasoning Plaintiff's argument must fail, because Dr. Bennett is not a treating source, but a nontreating (i.e., examining) source.[4]  Thus, even if the ALJ had provided no explanation at all for his rejection of Dr. Bennett's assessment, which he did not, no error would be committed and the decision should not be reversed.

---

[4] "Nontreating source means a physician, psychologist, or other acceptable medical source who has examined you but does not have, or did not have, an ongoing treatment relationship with you."  20 C.F.R. § 404.1502.  "Treating source means your own physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you."  *Id.*  From the record, it appears that Dr. Bennett examined the Plaintiff on only one occasion.  This clearly cannot constitute the "ongoing treatment relationship" required for Dr. Bennett to be considered a treating source.  *Id.*

Even were the Court to examine the ALJ's rationale for rejecting Dr. Bennett's opinion under the same framework and analysis applied to treating-source opinions, using the same criteria and factors identified in 20 C.F.R. § 404.1527(d)(2)-(6), that rationale must be upheld by the Court.  The ALJ's stated reasons for rejecting Dr. Bennett's opinion clearly imply that the opinion is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" (no clinical findings in examiner's report to support its conclusions), or is "inconsistent with the other substantial evidence in [the] case record" (opinion was rejected by nonexamining state agency consultants; opinion is inconsistent with treating-source assessments).  ALJ's Opinion, at 7; 20 C.F.R. § 404.1527(d)(2).  These reasons also plainly invoke the "supportability" and "consistency" factors, while the "specialization" factor is inapplicable since neither party has claimed that Dr. Bennett is a specialist.  *Id.* §§ 404.1527(d)(3)-(5).  The factors of "length of treatment relationship and frequency of examination" and "nature and extent of the treatment relationship" necessarily can apply only to treating sources, which Dr. Bennett is not.  *Id.* §§ 404.1527(d)(2)(i)-(ii).

Finally, there is substantial evidence to support the ALJ's stated reasons for the rejection of Dr. Bennett's assessment of "marked" limitations in her ability to tolerate workplace stress and pressure.  The nonexamining state agency medical consultants did indeed reject Dr. Bennett's opinion after reviewing a greater portion of the medical record, as the ALJ stated.  ALJ's Opinion, at 7; Tr., at 313-52.  Dr. Bennett's "marked limitations" finding does appear inconsistent with many of the Comp Care psychological assessments, which rated Plaintiff's

psychological functional abilities in the range from "slightly low" to "slightly high."[5]  The ALJ's statement that no clinical findings in Dr. Bennett's report support her conclusion also appears to be sound.  Dr. Bennett's report indicated that Plaintiff's capacity for insight, memory, and general intelligence were low, but that Plaintiff also displayed adequate judgment, was capable of making decisions for herself independently, and was responsive, cooperative, and had intact attention and concentration.  ALJ's Opinion, at 7; Tr., at 230 -32.  The ALJ properly explained his rejection of Dr. Bennett's opinion, and this explanation was supported by substantial evidence.  No reversible error was committed here.

**3.     Substantial Evidence Review of Decision on Mental Impairments**

For Plaintiff's mental impairments, the ALJ utilized the five-step process described above to determine that Plaintiff is not disabled due to her mental impairments.  The ALJ found that the medical evidence indicates that Plaintiff has mental impairments of anxiety disorder and depressive disorder, and that these impairments are "severe," but that they are not "severe" enough to meet or medically equal one of the social security regulations' listed impairments.  ALJ's Opinion, at 5.  Going on, the ALJ then determined that Plaintiff has only moderate difficulties in maintaining social functioning, as well as concentration, persistence, or pace; that Plaintiff has only mild restrictions in her activities of daily living, *id.* at 6; and that Plaintiff's

---

[5]  The ALJ characterizes these Comp Care assessments as "treating source assessments."  ALJ's Opinion, at 7.  These assessments were all filled out by Linda Caldwell, Plaintiff's case manager at Comp Care.  *See* Tr., 207, 216, 224, 368; Plaintiff's Motion, at 7.  It is not clear from the record or the pleadings whether Caldwell is actually a treating source under the social security regulations.  Assuming Caldwell is not a treating source, however, this error on the ALJ's part is harmless.  Even if Caldwell is not a treating source, her assessments can still constitute substantial evidence to support the ALJ's decision to reject Dr. Bennett's opinion.  *See* 20 C.F.R. § 404.1527(d)(4) ("Generally, the more consistent an opinion is *with the record as a whole*, the more weight we will give to that opinion.") (emphasis added); *id.* § 404.1527(f)(2)(ii) (ALJ must evaluate opinion using factors such as "*the supporting evidence in the case record*.") (emphasis added).

23

impairments have not resulted in a complete inability to function outside the area of her home.
*Id.* The ALJ then found Plaintiff to have a mental RFC limiting her to "simple, object-focused tasks with little public contact that accommodate moderate limitations in her ability to carry out detailed instructions, maintain attention or concentration, work in coordination with others without being distracted, interact with the public and respond appropriately to routine work setting changes." ALJ's Opinion, at 8. Since the ALJ determined that there are a significant number of jobs in the national economy to accommodate Plaintiff, Plaintiff was not found to be disabled due to her mental impairments. *Id.* at 8-9. Plaintiff argues that this determination is not supported by substantial evidence.

The Court disagrees with Plaintiff. A review of the medical record indicates that substantial evidence does support the ALJ's conclusions about Plaintiff's mental impairments. Throughout Plaintiff's years at Comp Care, she has consistently complained of depression, worry, and anxiety. Tr., at 198-227, 361-72. However, there is very little evidence to indicate that these symptoms were ever so disabling as to completely prevent her from maintaining employment. During numerous psychological evaluations, Plaintiff has been described as alert and oriented, with adequate judgment, insight, memory, and attention. Tr., at 200-07, 210-16, 218-24, 362-68, 370, 372. Plaintiff has always denied any psychotic symptoms. Tr., at 209, 372. Plaintiff admitted that her symptoms improved with the use of her prescribed medications. Tr., at 200, 371, 372. Her psychological evaluations from Comp Care have all indicated her abilities in several areas of personal and societal functioning to be either "slightly low" or "slightly high," hardly indicative of total disability due to mental impairments.

Though Dr. Bennett's assessment of "marked limitations" in Plaintiff's ability to tolerate

24

workplace stress and pressure does undercut the ALJ's findings, the ALJ properly rejected this assessment in Dr. Bennett's report, as explained above.  It therefore provides no support for Plaintiff's argument.  Moreover, when the remainder of Dr. Bennett's report is taken into consideration, the ALJ's conclusions are further bolstered.  Dr. Bennett found Plaintiff's GAF at that time to be 50, indicating serious limitations of functioning.  Tr. , at 232; ALJ's Opinion, at 4.  However, Dr. Bennett concluded that Plaintiff's capacity to sustain attention and concentration towards the performance of simple repetitive tasks is affected with only slight limitations.  Dr. Bennett also concluded that Plaintiff's capacity to understand instructions towards the performance of such simple repetitive tasks, as well as her capacity to interact appropriately with supervisors and co-workers, is not affected at all by her impairments.  Tr., at 232.  These conclusions are broadly consistent with the ALJ's disability findings.

In addition, state agency reviewing psychologists Drs. Scher and Brake separately determined that Plaintiff has moderate, rather than marked, limitations in maintaining social functioning, concentration, and persistence, and only mild limitations in her activities of daily living.[6]  Tr., at 323, 337.  Dr. Brake also opined that Plaintiff suffers from only moderate limitations in functional aspects such as remembering and carrying out detailed instructions, maintaining attention for extended time periods, working with others and interacting with the public without distraction, and responding appropriately to workplace changes.  Tr., at 341-42.  Dr. Brake concluded with her opinion that Plaintiff can understand and recall simple material, concentrate and persist at simple tasks in two-hour segments, function in an object-focused

---

[6] As mentioned earlier, Drs. Scher and Brake also expressly rejected Dr. Bennett's finding of "marked" limitations.

setting that requires little public contact, and adapt to routine changes.  Tr., at 343.  These mental

RFC assessments and conclusions are entirely consistent with the ALJ's own RFC assessment

and conclusion that Plaintiff's mental impairments are not of listing-level severity.  In addition,

by Plaintiff's own testimony, she retains the ability to grocery shop twice a month, independently

bathe and dress herself, prepare simple meals, do laundry at the Laundromat, and do dishes and

other chores when she "feels up" to it.  ALJ's Opinion, at 3.  Such admissions further support the

ALJ's findings regarding Plaintiff's mental impairments and retained abilities to perform work.

Finally, it should again be noted that the ALJ considered Plaintiff's testimony during her

administrative hearing and did not find it to be credible.  ALJ's Opinion, at 7.  Because of this

testimony, the ALJ instead believed that both Plaintiff's "physical *and mental functional abilities*

*are greater than she asserts.*"  *Id.*  This credibility determination is evidence that a reviewing

court cannot reevaluate.  *See Nelson*, 195 Fed. Appx. at 468; *Garner*, 745 F.2d at 387.

Substantial evidence supports the ALJ's determination that Plaintiff has no mental impairments

of listing-level severity, and that she retains the RFC to do work that exists in significant

numbers in the national economy.  No reversible error was committed here.

**WHEREFORE,** For the reasons stated above:

1.    Plaintiff's Motion for Summary Judgment is **DENIED;** and

2.    Defendant's Motion for Summary Judgment is **GRANTED.**

Dated this 18th day of April, 2008.



**Signed By:**

**_Karen K. Caldwell_**

**United States District Judge**